# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA ECKERT MURRAY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| IBEW LOCAL UNION NO. 98 | : | NO. 10-3852 |
| PENSION PLAN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                                             May 17, 2011

Currently pending before the Court is the Motion of Defendant IBEW Local Union No. 98 Pension Plan for Summary Judgment. For the following reasons, the Motion is granted and judgment is entered in favor of Defendant and against Plaintiff on the entirety of the Complaint.

## I. FACTUAL AND PROCEDURAL HISTORY

The crux of the present case centers on Plaintiff Barbara Eckert Murray's claim for a joint and survivor annuity, as the alleged surviving common-law wife of Michael Murray, deceased, from Defendant IBEW Local Union No. 98 Pension Plan. Defendant IBEW Local Union No. 98 Pension Plan denied the claim and Plaintiff now seeks judicial review. In order to conduct the appropriate judicial review of this decision, the Court must look to the record as a whole consisting of all evidence before the administrator when the decision was made. Doyle v. Nationwide Ins. Cos. & Affiliates Emp. Health Care Plan, 240 F. Supp. 2d 328, 335 (E.D. Pa. 2003).

Defendant, the IBEW Local Union No. 98 Pension Plan (the "Plan") is a defined benefit

Taft-Hartley Plan that is jointly administered by Trustees appointed by employers who contribute to the Plan and by Trustees appointed by the I.B.E.W. Local 98. (Def.'s Mot. Summ. J., Aff. of Debra Gerber, ¶ 2, Mar. 16, 2011 ("Gerber Aff.").) The primary benefit provided by the Plan is a pension annuity, which pays a monthly benefit from the date a participant retires until the date of that participant's death. (Id. ¶ 3.) According to the Plan, and under Section 205(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1055, if, on the annuity starting date, a participant is married, the standard form of benefit is paid as a "joint and survivor annuity." (Def.'s Mot. Summ. J., Ex. A, § 2.5.3.) This joint and survivor annuity pays out a lifetime annuity from the date of the participant's annuity, which is then converted, upon the death of the participant, to a survivor's annuity for the remainder of the life of the participant's spouse. (Id.) The survivor annuity is paid only to the legal spouse of the participant and may not be assigned to any other beneficiary. (Gerber Aff. ¶ 5.)

Michael Murray worked as an electrician and was, through his employer, a participant in the Plan. (Id. ¶ 6.) Defendant asserts, and Plaintiff does not dispute, that according to the Plan's records, Mr. Murray had been married, but divorced in the 1980's. On February 23, 1986, he submitted a Beneficiary Designation form that listed his three children – Michael P., Kelly A., and Brian A. – as beneficiaries. (Def.'s Mot. Summ. J., Ex. B.) Thereafter, on May 12, 2005, Defendant received a new Beneficiary Designation form listing Plaintiff, Barbara A. Eckert, as the new beneficiary and Michael Murray's "common-law-wife." (Id.) Notably, however, this form was signed only by Ms. Eckert. (Id.) On December 21, 2006, Mr. Murray submitted a Pension Application to the Plan stating that he was taking an early retirement and was seeking to start collecting his pension as of January 1, 2007. (Def's Mot. Summ. J., Ex. C.) Mr. Murray

2

indicated on that Application that he was "divorced." Id. Prior to the annuity payments beginning, Mr. Murray died on January 1, 2007. (Gerber ¶ 11.)

Because Plaintiff was identified as Mr. Murray's common law wife on the latest Beneficiary Designation form, the Plan sent her a letter, dated March 7, 2007, indicating that she needed to submit proof of her common law marriage in order to qualify for the Joint and Survivor Annuity. (Def.'s Mot. Summ. J., Ex. D.) The letter requested that she provide to Defendant copies of her federal income tax Form 1040 for the years 2003, 2004, and 2005, as well as any additional information she had to substantiate the common law marriage. (Id.) Further, it sought copies of both Mr. Murray's and her birth certificate. (Id.)

Via letter dated March 15, 2007, Plaintiff responded through her attorney, Lewis Walder, Esquire. (Def.'s Mot. Summ. J., Ex. E.) The letter stated that Plaintiff was named as Mr. Murray's beneficiary on two life insurance policies as his "common law wife," and was paid proceeds through those policies. (Id.) In addition, the letter enclosed a copy of Mr. Murray's Last Will and Testament, dated May 18, 2005, in which he referred to Plaintiff as his spouse. (Id.) The letter also provided birth certificates for both Mr. Murray and Plaintiff, and indicated that "[t]here are many witnesses, including former neighbors and family members who view them as husband and wife having heard them frequently use reference to each other as husband and wife. She wore a wedding band and they have continuously resided with each other for more than 15 years." (Id.) The letter concluded that, "[t]here is no question in my mind that based on my more than 40 years of experience in the practice before the Family Court and the Orphan's Court of Philadelphia County that I will be able to prove the existence of a common law marriage in this case." (Id.) Notably, none of the requested tax returns were provided with this letter.

3

(Gerber Aff. ¶ 13.)

The Plan then sent Attorney Walder a response dated March 26, 2007, stating, in pertinent part, as follows:

> As we indicated in our prior correspondence to Ms. Eckert, the Plan must determine if she is entitled to a Joint and Survivor Benefit. In this regard, we have requested copies of her Federal Income Tax 1040 for the years: 2003, 2004 and 2005.
>
> We have reviewed the Last Will & Testament of Michael Murray and it does indeed list Barbara Eckert as his common law spouse. Unfortunately, it is dated May 18, 2005 at which time the State of Pennsylvania no longer recognized common law marriages. However, if the common law marriage was entered into prior to January 1, 2005, it would be recognized.
>
> Until we received the requested tax returns and any other documentation in support of this common law marriage, we cannot proceed.

(Def.'s Mot. Summ. J., Ex. F.)

Under cover of letter dated April 4, 2007, Attorney Walder then submitted copies of Plaintiff's tax returns for the years 2002, 2003, and 2006. (Def.'s Mot. Summ. J., Ex. G.) Mr. Walder remarked that Mr. Murray and Ms. Eckert did not file joint tax returns, but she claimed him as a dependent on her tax return. (Id.) He explained that because Mr. Murray developed Hodgkins disease in 1991, he and Plaintiff chose to use separate names so as not to expose her to payment of his medical bills. (Id.) Nonetheless, he asserted that, "[t]he filing of a spousal or non-spousal tax return is not conclusive evidence of the existence or non-existence of a common law marriage under Pennsylvania law." (Id.) The letter further (1) enclosed "a copy of a 'Love' card from the deceased that was signed by Mr. Murray stating, 'We live together as one,'" and (2) noted that numerous neighbors and family members could testify as to their reputation as

4

husband and wife, including Plaintiff's wearing of a wedding band. (Id.) Finally, Mr. Walder enclosed a copy of a Complaint for declaratory judgment, which he intended to file with the Philadelphia County Court of Common Pleas in the event benefits were not forthcoming by the end of the month. (Id.) Notably, on her enclosed tax returns, Plaintiff listed herself as single, with Mr. Murray claimed as a dependent and their relationship described as "other." (Def.'s Mot. Summ. J., Ex. H.) No tax returns for 2004 and 2005 were provided. (Gerber Aff. ¶ 15.)

Given the threatened lawsuit, the Plan forwarded the matter to Plan counsel Regina Hertzig. (Id. ¶ 16.) On May 2, 2007, Ms. Hertzig wrote to Mr. Walder, stating as follows:

> The undersigned is counsel to the IBEW Local 98 Pension Fund. Your correspondence of April 4, 2007 has been referred to me for reply. We need further information before we can determine whether Ms. Eckert is eligible for benefits from the Fund. Specifically, as you are aware 23 Pa.C.S. § 1103 provides in relevant part: "No common-law marriage contracted after January 1, 2005 shall be valid." As such, in order to determine whether Ms. Eckert is eligible for benefits, she will need to establish that her common-law marriage with Mr. Murray was established before that date. The documents you have provided thus far do not demonstrate that her common-law marriage was established prior to January 1, 2005. Please forward whatever evidence you have concerning this matter at your earliest convenience so that the Fund may make a determination regarding her benefit claim.
>
> In addition, please be aware that because the Pension Fund is governed by the Employee Retirement Income Security Act ("ERISA"), state law is preempted.

(Def.'s Mot. Summ. J., Ex. I.)

More than a month and a half later, on June 21, 2007, Ms. Hertzig sent another letter to Mr. Walder indicating that she had reviewed Plaintiff's pension application and noted that, as of December 21, 2006, Mr. Murray considered himself "divorced" and not in a common-law marriage with Plaintiff. (Def.'s Mot. Summ. J., Ex. J.) In addition, she remarked that the tax records, both before and after January 1, 2005, listed Plaintiff's status as "single" and claimed

5

Mr. Murray's dependent relationship to her as "other." (Id.) She noted that "at this juncture, Ms. Eckert has not even filed an application for pension benefits from the IBEW 98 Pension Plan." (Id.) The letter "strongly suggest[ed] that Plaintiff withdraw her state court action and pursue administrative remedies." (Id.)

Under cover of letter from Mr. Walder dated July 16, 2007, the Plan received Plaintiff's application for a survivor's pension. (Def.'s Mot. Summ. J., Ex. K; Gerber Aff. ¶ 17.) The letter also enclosed the following documents as evidence of a common law marriage: (1) Mr. Murray's birth certificate; (2) birth certificate of "Barbara Eckert-Murray" (using for the first time Mr. Murray's surname); (3) last will and testament of Michael Murray dated May 18, 2005, identifying Barbara Eckert as his wife; (4) death certificate identifying the decedent as "married" and surviving spouse Barbara Monteforte (Plaintiff's maiden name); (5) a Beneficiary Designation Form for death benefits from the IBEW Pension Benefit Fund ("National Plan")[1] dated May 13, 2005, and signed by the decedent identifying the beneficiary Barbara Eckert as his wife; (6) a copy of the Union Labor Life Insurance Company policy issued to International Brotherhood of Electrical Work Local Union No. 98 in which the decedent registered Barbara A. Eckert as his wife; (7) correspondence dated July 15, 2005 from the National Plan acknowledging the decedent's primary beneficiary to be his common law spouse; and (8) acknowledgment dated January 22, 2007 from the National Plan paying Barbara Eckert as beneficiary of a death claim. (Id.)

On August 1, 2007, Defendant sent a letter to Mr. Walder advising that the Plan was

---

[1] As averred by Defendant's representative Debra Gerber, the International Brotherhood of Electrical Workers Pension Benefit Fund is not part of the Plan that is the Defendant in this action. It is the National Fund, as opposed to a local union fund. (Gerber Aff. ¶ 18.)

6

denying Plaintiff's claim for benefits "as none of the documents you have provided demonstrate that a common-law marriage was established *prior* to January 1, 2005 as required. In fact, Mr. Murray's pension application made shortly before his death indicated that his marital status was 'divorced.'" ((Def.'s Mot. Summ. J., Ex. L.) The letter concluded by describing the appeal process and Plaintiff's right to appeal the decision to the Board of Trustees. (Id.)

On August 9, 2007, Mr. Walder forwarded a letter, also signed by Plaintiff, to the Board of Trustees in which he indicated Plaintiff's desire to appeal the denial of benefits. (Def.'s Mot. Summ. J., Ex. M.) The letter set forth no basis for the appeal and attached no additional information. (Gerber Aff. ¶ 20.) Because of this lack of new documentation, Defendant expected further information to follow and, thus, waited before submitting the matter to the Board of Trustees. (Id. ¶ 21.) On January 7, 2008, a representative from Mr. Walder's office called to inquire about the status of the appeal, and the Plan advised her that it was waiting for additional information to be submitted by Plaintiff. (Id. ¶ 22.) Nonetheless, no new information was forthcoming. (Id. ¶ 23.) Instead, on July 1, 2009, Mr. Walder sent another letter enclosing the identical information supplied with the July 16, 2007 letter. (Def.'s Mot. Summ. J., Ex. N.)

The Board of Trustees met on October 2, 2009 to consider Plaintiff's appeal. (Gerber Aff. ¶ 23; Def.'s Mot. Summ. J., Ex. O.) By way of letter dated December 3, 2009, it advised Mr. Walder of its decision to uphold the determination that Plaintiff was not entitled to a qualified pre-retirement survivor annuity. (Id.) It explained as follows:

> Under the provisions of Section 2.5.5 of the Pension Fund, only a spouse is entitled to a qualified pre-retirement survivor annuity. As you are no doubt aware, under Pennsylvania law, if a common law marriage was entered into prior to January 1, 2005, it remains valid. On and after that date, however, a new common law marriage will not be recognized. In this case, none of the

>documentation that was submitted proves or otherwise confirms that Michael
>Murray and Barbara Eckert-Murray entered into a common law marriage prior to
>January 1, 2005. Accordingly, the Trustees denied the appeal.

(Id.)

Plaintiff filed the present action on July 30, 2010, claiming: (1) "Breach of the Union Provisions of the Local No. 98 Pension Plan"; (2) unjust enrichment; and (3) breach and violation of the Employee Retirement Income Security Act. Defendant then moved for summary judgment on March 17, 2011, Plaintiff responded on March 28, 2011, and Defendant submitted a Reply Brief on April 2, 2011. This Motion is now ripe for the Court's consideration.

## II.     STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light

most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the nonmovant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson, 477 U.S. at 249-50.

## III.   DISCUSSION

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that, when evaluating challenges to denials of benefits in actions brought under 29 U.S.C. § 1132(a)(1)(B), district courts are to review the plan administrator's decision under a *de novo* standard of review, unless the plan grants discretionary authority to the administrator or fiduciary to determine eligibility for benefits or interpret the terms of the plan. Id. at 115.  Thus, when, as here,[2] discretionary authority is given to an administrator of a plan, a deferential standard of arbitrary and capricious is applied.  Id. at 111; Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); Kalp v. Life Ins. Co. of N. Am., No. CIV.A.08-1005, 2009 WL 261189, at *1 (W.D. Pa. Feb. 4, 2009).  In such cases, a court may overturn a plan administrator's decision only if that decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d. Cir. 2000), abrogated on other grounds, Schwing, 562 F.3d at 525; see also Gillis

---

[2]  Defendant asserts, and Plaintiff does not disagree, that the Plan at issue grants Defendant discretionary authority to administer the Plan.  Specifically, section 5.8.4 states:

> In making decisions on review, the Trustees shall have full and exclusive discretionary authority to determine all questions of coverage and eligibility.  The Trustees shall have the fullest discretion allowed by law:  (i) to construe and interpret all Plan provisions, including ambiguous provisions; (ii) to construe and interpret all documents, provisions, rules and regulations, and procedures of the Plan and Trust Agreement; and (iii) to determine all questions of eligibility for benefits.  In addition, the Trustees shall have full and exclusive discretionary authority to determine and decide all questions of fact as well as the application of the terms of the Plan and the law to the facts.  Any such determination or construction made by the Trustees shall be binding upon all of the parties and Beneficiaries to the maximum extent permitted by law, and shall not be overturned by a court unless it is arbitrary and capricious.

(Def.'s Mot. Summ. J., Ex. A, § 5.8.4(c).)

v. Hoechst Celanese Corp., 4 F.3d 1137, 1141 (3d Cir. 1993) ("[W]hen the arbitrary and capricious standard applies, the decision maker's determination to deny benefits must be upheld unless it was 'clear error' or 'not rational.'") (internal quotation omitted). "The scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009) (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993), cert. denied, 30 S. Ct. 1060 (2010)); see also Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010); Brown v. First Reliance Standard Life Ins. Co., No. CIV.A.10-486, 2011 WL 1044664, at *5 (W.D. Pa. Mar. 18, 2011). Such a deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." Conkright v. Frommert, 130 S. Ct. 1640, 1649 (2010).

On a motion for summary judgment in an ERISA case where the plaintiff claims that benefits were improperly denied, a reviewing court is generally limited to the facts known to the plan administrator at the time the decision was made. Post v. Hartford Ins. Co., 501 F.3d 154, 168 (3d Cir. 2007), overruled on other grounds, 574 F.3d 230 (3d Cir. 2009). "Consequently, when, as here, a plaintiff alleges that a plan administrator, such as [IBEW], abused its discretion in deciding to terminate benefits, [the Court] generally limit[s] [its] review to the administrative record, that is, to the 'evidence that was before the administrator when [it] made the decision being reviewed.'" Sivalingam v. Unum Provident Corp., 735 F. Supp. 2d 189, 194 (E.D. Pa. 2010) (quoting Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)); see also Johnson v. UMWA Health & Ret. Funds, 125 Fed. Appx. 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the

11

record made before the Plan administrator, which cannot be supplemented during the litigation.")³

In the present matter, Plaintiff contends that "[t]he true issue before this Honorable Court is a factual determination as to whether plaintiff, Barbara Eckert Murray and Michael Murray, deceased were common law spouses." (Pl.'s Resp. Mot. Summ. J. 5-6.) Plaintiff, however, is mistaken on this fundamental point, as the issue is far narrower. The focus of this Court's inquiry is whether, based on the record before it at the time of the decision, Defendant's determination that Plaintiff was not in a common law marriage with Michael Murray, and thus not entitled to the joint and survivor annuity, was arbitrary and capricious, *i.e.* "without reason, unsupported by substantial evidence or erroneous as a matter of law."

To make such a determination, the Court must consider the Pennsylvania law regarding common law marriage and apply such law to the administrative record, as previously summarized. "A common law marriage can only be created by an exchange of words in the present tense, spoke with the specific purpose that the legal relationship of husband and wife is created by that." Staudenmeyer v. Staudenmeyer, 714 A.2d 1016, 1020 (Pa. 1998) (footnote omitted) (citing Commonwealth v. Gorby, 588 A.2d 902, 907 (Pa. 1991)). "The common law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time." Id. The burden

---

³ Via a separate Memorandum and Order, this Court granted Defendant's Motion to Strike Exhibits B, C, D, J, K from Plaintiff's Response to the Motion for Summary Judgment, as well as paragraphs 1, 2, 3, 4, 5, 6, and 9 of Exhibit A (Plaintiff's Affidavit), since none of these documents/evidence were provided to Defendant prior to the issuance of the December 2, 2009 decision on Plaintiff's appeal of the denial of joint and survivor benefits. Accordingly, the Court does not include consideration of these documents in its review of Defendant's decision.

of proving the existence of a common law marriage is on the party alleging the marriage. Id. This is a "heavy burden" because "when an attempt is made to establish a marriage without the regular formalities, the claim must be reviewed with 'great scrutiny.'" Id. (quoting Estate of Gavula, 417 A.2d 168, 171 (Pa. 1980)). Although the Pennsylvania Supreme Court has allowed proof of constant cohabitation to be used as evidence of common law marriage, it has questioned the reliability of such evidence in light of the fact that cohabitation between unmarried people does not carry the same "social taboo" as it did when common law marriage was originally developed. Id. at 1021, n.8. Recognizing the potential for fraud in the common law marriage doctrine, the Pennsylvania Supreme Court has noted that such claims are viewed with skepticism and disfavor. Id. at 1019-20.

Notably, the Pennsylvania legislature abolished the doctrine of common law marriage as of January 1, 2005. Specifically, the statute presently states that "[n]o common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." 23 PA. CONS. STAT. § 1103. Thus, in order for a common law marriage to be valid and enforceable, those seeking to prove it must show that it was contracted on or before January 1, 2005. Stackhouse v. Stackhouse, 862 A.2d 102, 108 (Pa. Super. Ct. 2004). In turn, "the date on which the evidence establishes the creation of a common law marriage, if it establishes one at all, is a critical determination upon which depends the rule of law to be applied." Id.

In the present case, despite repeated reminders from Defendant that Plaintiff needed to provide proof of a common law marriage existing prior to January 1, 2005, none of the evidence offered by Plaintiff allowed for such a finding. Specifically, she provided Defendant with the

13

following documents:

- A Beneficiary Designation form, dated May 12, 2005 and signed by Plaintiff, listing Plaintiff as Michael Murray's new beneficiary and his "common-law-wife." (Def.'s Mot. Summ. J., Ex. B.)

- A copy of Mr. Murray's Last Will and Testament, dated May 18, 2005, referring to Plaintiff as his spouse. (Def.'s Mot. Summ. J., Ex. E.)

- A copy of an undated "Love" card from Mr. Murray to Plaintiff stating "We live together as one." (Id.)

- Michael Murray's death certificate, dated March 1, 2007, listing him as married and identifying Plaintiff as his wife. (Def.'s Mot. Summ. J., Ex. K.)

- A Beneficiary Designation Form for the National Plan, dated May 13, 2005, and signed by Mr. Murray identifying Plaintiff as his beneficiary and common-law wife. (Id.)

- A certificate from the Union Labor Life Insurance Company, dated May 16, 2005, changing Mr. Murray's beneficiary to Plaintiff, as his common-law wife. (Id.)

- A letter from the National Plan, dated January 22, 2007, sending Plaintiff payment of the death claim for Mr. Murray, in the amount of $3,052.50. (Id.)

In stark contrast to this evidence, Defendant had in its possession a copy of Mr. Murray's Pension Application, dated December 21, 2006, indicating that he was "divorced." (Def.'s Mot. Summ. J., Ex. C.) In addition, Defendant considered Plaintiff's tax returns for the years 2002, 2003, and 2006, all of which listed her status as "single" and Mr. Murray's relationship to her as "other." (Def's Mot. Summ. J. Ex. H.)

Thus, when making its determination that Plaintiff was not Mr. Murray's common-law wife, Defendant had before it no evidence indicating that prior to 2005, Plaintiff and Mr. Murray had intended to create a legal contract binding them in marriage. The record was devoid of any evidence of an exchange of present tense words creating a marriage contract, any evidence of

14

constant cohabitation, or any evidence that they held themselves out to be married. Moreover, although Mr. Walder repeatedly asserted in his letters that numerous neighbors and family members could testify as to Plaintiff and Mr. Murray's reputation as husband and wife, as well as her use of a wedding band, (Def.'s Mot. Summ. J., Exs. E, G), Plaintiff never produced any affidavit or letter from any individual making such representations.

Plaintiff suggests that other entities, such as the National Fund and a life insurance company, determined that Plaintiff was in common law marriage with Mr. Murray and that evidence should be sufficient for Defendant in this case. No clear evidence exists, however, of what proof these entities had before them when rendering their decisions. Indeed, the record seems to suggest that these other entities may have had additional information not available to Defendant. Moreover, Plaintiff has not indicated what standard these other entities used to award benefits or claims. As noted by Defendant's representative, Debra Gerber, due to potential differences in standards, the Plan at issue need not defer to any other benefit plan or insurance company's decision when making an eligibility determination under the Plan documents. (Gerber Aff. ¶ 2.) Thus, the mere presence of the contrary decisions by other entities does not render Defendant's decision arbitrary and capricious.

Finally, Plaintiff argues that she had substantial other evidence of a common law marriage existing prior to 2005, which she claims to have provided to her attorney, but which Defendant has failed to acknowledge in this matter. As more fully addressed in this Court's Memorandum and Order regarding Defendant's Motion to Strike, however, there is no proof that this evidence was ever turned over to Defendant for its review prior to its rendering of the December 2009 decision. Under the principles of law set forth above, absent some showing that

15

these documents were part of the administrative record, this Court is barred from considering them at this juncture.

In light of the foregoing, the Court must grant summary judgment in favor of Defendant and dismiss the entirety of the action. While the Court recognizes that the outcome of this Motion may not yield the most equitable result for Plaintiff, the fact remains that Defendant offered Plaintiff a more than fair and reasonable opportunity to prove the existence of her common law marriage prior to 2005 before rendering any decision. Plaintiff's failure to do so – be it her fault or that of her former counsel – precludes this Court from declaring Defendant's decision arbitrary and capricious.